[Doc. No. 40]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 09-mj-2001 (JS) |
| LARRY REDDICK | |

**<u>OPINION</u>**

This matter is before the Court on defendant's "Motion to Vacate Complex Case Designation." Defendant's motion asks the court to vacate its May 4 and 6, 2010 Orders and not to exclude from Speedy Trial Act computations the time subsequent to these Orders. The Court received the government's opposition and recently held oral argument. For the reasons to be discussed, defendant's motion is DENIED.

<u>Background</u>

On January 8, 2009, a criminal complaint was issued charging defendant with knowingly and willfully using and carrying a firearm (9mm handgun), during and in relation to a conspiracy to distribute and possess crack cocaine. The complaint alleges that during the course of the offense defendant shot and murdered Brian Parker with malice aforethought. After the complaint was issued defendant was arrested and his initial appearance was held on January 12, 2009.

At his initial appearance, Michael E. Riley, Esquire was appointed as defendant's counsel and defendant was temporarily detained pending his bail hearing. Defendant consented to detention on January 16, 2009. On January 29, 2009, the Court appointed Jean D. Barrett, Esquire, as defendant's co-counsel pursuant to 18 U.S.C. §3005 as she is "learned in the law applicable to capital cases." Defendant was advised at his initial appearance that he faced the possibility of a death sentence but that the decision had not yet been made whether to seek the death penalty. See January 12, 2009 Transcript ("Tr.") at 7:13-19.

With the joint consent of the parties, five continuances were entered excluding the time under the Speedy Trial Act pursuant to 18 U.S.C. §3161(h)(7)(A).[1] Other continuances have been imposed pursuant to statutory requirements. A summary of all continuances is as follows:[2]

| Docket No. | Date Order Entered | Excluded Dates | Authority |
|---|---|---|---|
| 11 | January 16, 2009 | January 16 to April 17, 2009 | Ends of Justice 18 U.S.C. §3161(h)(8)(A) |
| 15 | April 8, 2009 | April 8 to June 17, 2009 | Ends of Justice 18 U.S.C. §3161(h)(8)(A) |

---

[1] These continuances were entered on January 16, April 8, June 16, September 16, 2009, and February 5, 2010. Mr. Reddick signed the last Order.

[2] Prior to amendment in 2008, the "ends of justice" continuance was codified in subsection 8 rather than in the current subsection 7.

2

| Docket No. | Date Order Entered | Excluded Dates | Authority |
|---|---|---|---|
| 17 | June 16, 2009 | June 16 to September 17, 2009 | Ends of Justice 18 U.S.C. §3161(h)(7)(A) |
| 18 | | August 7 to September 16, 2009 | Outstanding Motion-18 U.S.C. §3161(h)(1)(D) |
| 20 | September 16, 2009 | September 16 to December 18, 2009 | Ends of Justice 18 U.S.C. §3161(h)(7)(A) |
| 21 | | December 24, 2009 to February 5, 2010 | Outstanding Motion-18 U.S.C. §3161(h)(1)(D) |
| 24 | February 5, 2010 | February 5 to March 9, 2010 | Ends of Justice 18 U.S.C. §3161(h)(7)(A) |
| 25 | | March 19 to May 4, 2010 | Outstanding Motion-18 U.S.C. §3161(h)(1)(D) |
| 28/29 | May 4, 2010 (amended May 6, 2010) | May 6, 2010 to present | Complex Case- 18 U.S.C. §3161(h)(7)(A) and (B)(ii) |

On May 4, 2010, the Court granted the "Motion of the United States for Designation as a Complex Case and Continuance Pursuant to the Speedy Trial Act, 18 U.S.C. §3161(h)(8)(B)(ii)."[3] The Order was entered after Mr. Riley wrote the Court on April 5, 2010 [Doc. No. 27] that he "had no objection to the government's motion declaring the Reddick matter be a complex case."

On or about August 25, 2010, defendant served his pro se

---

[3] The Order was amended on May 6, 2010 to correct several citations in the May 4 Order. For ease of reference the Court will refer to the May 4, 2010 Order.

3

"Motion to Dismiss the Complaint." The Court held an in-person status conference on October 7, 2010 and granted defendant's request for new counsel. The Court also advised new counsel to re-file defendant's motion if defendant intended to pursue the requested relief. An Order appointing defendant's present counsel, Rocco C. Cipparone, Jr., was entered on October 12, 2010. Ms. Barrett's status as learned counsel has not changed since she was appointed on January 29, 2009.

Defendant's present motion does not object to any of the continuances or Orders in the case except for the May 4, 2010 Order. Defendant first argues that his prior counsel, Mr. Riley, did not have his consent to represent that he did not object to the designation of this matter as a complex case. Defendant contends that this invalidates the complex case Order. Second, defendant argues this is not a complex case. Third, defendant argues the alleged "open-ended" continuance in the May 4, 2010 Order was unreasonable. Although defendant is not moving at this time to dismiss the complaint, he argues that all time stemming from the complex case Order should not be excluded from the requirements of the Speedy Trial Act. The government argues defendant's consent to the complex case Order was not required, that this is a complex case and that the May 4, 2010 Order is not unreasonable.

Discussion

The Court will first address whether defendant's lack of

consent to the complex case Order invalidates the Order.[4]  Pursuant to the Speedy Trial Act ("Act"), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested...."  18 U.S.C. §3161(b).  However, the Act provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence."  18 U.S.C. §3161(h).  Included among the listed exceptions is "[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Id. at §3161(h)(7)(A).  In undertaking this balancing, the court must set forth "in the record of the case, either orally or in writing," the reasons in support of its conclusion.  Id.  These continuances may be granted "at the request of the defendant or his counsel or at the request of the attorney for the Government," or by the "judge on his own motion."  Id.

It is well settled that defense counsel has the authority to request a Speedy Trial Act continuance without his or her client's consent.  United States v. Stradford, No. 083256, 2010 WL 362295,

---

[4]Defendant argues, "[b]ecause the Court made the decision to designate the case complex based in part on the indication of no objection by Mr. Reddick's counsel <u>which was not authorized by Mr. Reddick</u>, the Court's designation of the matter should be deemed invalid."  Brief at 4 (emphasis in original).

5

at *3 (3d Cir. Sept. 20, 2010); United States v. Nguyen, 344 Fed. Appx. 821, 823 (3d Cir. 2009)("[A] defendant may waive his right to a speedy trial without explicitly stating a desire to do so"); United States v. Tulu, 535 F. Supp. 2d 492, 500 (D.N.J. 2008)(defendant's consent, or lack thereof, to a continuance requested by defense counsel is not controlling for Speedy Trial Act purposes). See also New York v. Hill, 528 U.S. 110, 115 (2000)("[S]cheduling matters are plainly among those for which agreement by counsel generally controls"). Indeed, this is made clear in the Act which provides that a continuance Order may be granted "at the request of the defendant or his counsel." (emphasis added). Thus, Mr. Riley plainly had the authority to consent to the Orders entered on January 16, April 8, June 16 and September 16, 2009, and February 5, 2010.

The Court finds that not only did defense counsel have the authority to consent to the foregoing Orders, but he also had the authority to consent to the government's complex case motion.[5] Although Hill, supra, did not specifically address Speedy Trial Act

---

[5] The parties appear to assume that Mr. Riley represented that defendant consented to the government's complex case motion. However, this is not the case. Mr. Riley merely represented that he had no objection to the motion. In the Court's view this is a subtle but substantive distinction. Nevertheless, since it makes no difference to the Court's ruling, the Court will assume that Mr. Riley represented that defendant consented to the government's motion and that Mr. Reddick did not give his consent.

6

waivers, its reasoning is applicable here.[6]  As applied to the Interstate Agreement on Detainers ("IAD"), the Supreme Court wrote, "In allowing the court to grant 'good-cause continuances' when either 'prisoner <u>or</u> <u>his</u> <u>counsel</u>' is present it [the IAD] contemplates that scheduling questions may be left to counsel...." <u>Id</u>. at 115 (emphasis in original).  The government's complex case motion involves a scheduling issue akin to what is involved when a routine continuance Order is entered.  As the Supreme Court wrote, "[w]hen that subject [a delay in trial] is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case.  Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier."  <u>Id</u>. at 115.[7]  Accordingly, the Court rejects defendant's argument that the complex case Order is invalid because defendant did not consent to defense counsel's representation that he did not object to the Order.[8]

Even if the Court held that defendant's consent was needed for Mr. Riley to represent that he was not opposing the government's

---

[6]The decision in <u>Hill</u> reads, "the question of waiver under the Speedy Trial Act is not before us today, and we express no view on the subject."  528 U.S. at 118 n.2.

[7]The Court also notes that defendant's learned counsel did not object to the entry of the continuance Orders and the May 4, 2010 Order.

[8]Defendant does not appear to argue that counsel may never consent to a complex case motion.  Instead, defendant is arguing that Mr. Riley's consent is invalid because he may not consent to an open-ended continuance.  For the reasons to be discussed <u>infra</u>, the Court also rejects this argument.

7

motion, this would not change the Court's ruling. This is so because even if the defendant objected the government's motion still would have been granted.

On May 4, 2010, the Court granted the government's motion designating this as a complex case pursuant to 18 U.S.C. §3161(h)(7)(A) and (7)(B)(iii). Pursuant to the Act, when determining whether an "ends of justice" continuance may be granted the court may consider, "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself" within the time limits established by the Speedy Trial Act. After analyzing the charges lodged against the defendant, and the fact that defendant potentially faced the death penalty, and after being advised of the procedures and steps the government must take before it decides whether to pursue the death penalty, the Court ruled that the government's complex case motion should be granted.[9]

---

[9] According to the government's lawyer, the Attorney General of the United States makes the final decision whether to seek the death penalty. Before the final decision is made, the U.S. Attorney's Office reviews the case and makes its own recommendation to the Capital Case Unit ("CCU") within the Criminal Division of the U.S. Dept. of Justice. The CCU then makes its own independent evaluation of the case and makes recommendations to the Attorney General who makes the final decision regarding whether to seek the death penalty. See generally Transcript of October 7, 2010 hearing. These procedures are detailed in the U.S. Attorney's Manual, Capital Crimes, Section 9-10.000.

8

In arguing that the Court should not have granted the government's motion, defendant argues the case is not complex because it only involves one defendant, there is no complicated series of charges, there is no voluminous or complicated discovery at issue, and defendant's competence is not at issue. Brief at 7-8. However, defendant's argument misses the mark. The Court did not designate the case as complex because defendant is charged with shooting and killing Brian Parker. Instead, the Court designated the case as complex because of the special nature of the government's prosecution, i.e., that it must decide whether to seek the death penalty. The May 4, 2010 Order makes it clear that the death penalty component of the case is what makes the case complex within the meaning of the Speedy Trial Act.[10]

After summarizing the procedure for deciding when to seek the death penalty, the May 4, 2010 Order found "that the nature of the prosecution and complexities involved in determining whether the defendant will face the death penalty are substantial." Order at 2-3. The Court ruled as it did because the defendant and his learned counsel needed and requested adequate time to present their input to the U.S. Attorney as to why it should not recommend that the death penalty be pursued. Indeed, at the August 26, 2009 hearing the government's lawyer stated: "We have not involved them

---

[10] The government agrees as evidenced by its statement at the February 5, 2010 conference: "Frankly, the facts of the case and the trial is not likely to be all that complex . . . And the complexity is primarily having to do with the issues of death penalties." Tr. at 4:18-23.

9

[Capital Case Unit] yet, primarily because, . . . , in our joint discussions [with Mr. Riley and Ms. Barrett], it was our agreement that we would provide the defense as sufficient and as much time as they would need to review the case, have discussions with Mr. Reddick.  But also, to engage other parties, like learned counsel, like a mitigation specialist, . . . , so that they could make their points and position known to the Capital Case Unit." Tr. at 4:4-19.  Defense counsel (Mr. Riley) "echoe[d]" what the government represented.  Tr. at 5:20-22.  The fact that this issue is complicated is borne out by the fact that even though learned counsel was appointed in January, 2009, she did not present defendant's mitigation materials to the U.S. Attorney until October 7, 2010.

The Court has no reason to question the government's representation that it was prepared to submit its death penalty recommendation to Washington in 2009 if defendant had not insisted it wanted to submit mitigation materials ahead of time.  October 7, 2010 Tr. at 9:24-25 to 10:1-3.  Although defendant's mitigation materials were provided on October 7, 2010, the U.S. Attorney's recommendation to Washington was further delayed because defense counsel asked to meet with the U.S. Attorney before its recommendation was made.  October 21, 2010  Tr. at 3:22 to 4:2.  That meeting was held on November 30, 2010.  Time and again the government has indicated that the decision whether to seek the death penalty "is a very delicate matter and we didn't want to dive into

10

it without certainly giving the defendant [the] opportunity to be heard." Id. at 6:7-9. As the foregoing facts demonstrate, there is no question that defendant's delay in submitting his mitigation arguments delayed the government's decision as to whether to seek the death penalty.[11]  This counsels against granting defendant's motion.  "The Third Circuit has been unreceptive to the defendant who plays a role in the delay of his trial and then relies on that delay in seeking the dismissal of his indictment." United States v. Guitierrez, No. 06-CR-582-4, 2007 WL 4302812, at *1 (E.D. Pa. Dec. 6, 2008)(citing United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994)). See also United States v. Groff, No. 05-1634, 2006 WL 952226, at *3 (3d Cir. 2006)("[T]he fact that the District Court was attempting to accommodate the defense as well as the government is relevant to our evaluation of the District Court's exercise of its discretion").

Defendant is incorrect if he argues or implies that the Court permanently designated the case as complex.  The Court only designated the case as complex "at least until the Attorney General makes its final decision regarding whether or not to seek the death penalty for defendant...." May 4, 2010 Order at 3.  The Order made it clear that after the Attorney General made its decision regarding whether to seek the death penalty, the Court would "promptly schedule a status conference to address all relevant Speedy Trial

---

[11]Learned counsel explained that she was on trial in a capital case in Pennsylvania the first half of 2010, "so I have just gotten off this." Id. at 10:20-22.

11

Act issues," including whether the complex designation should remain in place.  Id.

The Court rejects defendant's argument that the Court's Complex Case Order was "inappropriate".  Brief at 8.[12]  The decision whether to seek the death penalty is not straightforward.  Given the implications for defendant, it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time periods in the Speedy Trial Act.[13]  Accord United States v. Bernacett Cosme, 127 F. Supp. 2d 271, 273 (D.P.R. 2001)(granting a continuance "stopping the STA clock" based on the possibility the government would seek the death penalty); United States v. Storey, 927 F. Supp. 414, 415-16 (D. Kan. 1996)(granting a continuance where the defendant faced the death penalty because, "[g]iven the nature of the charges against the defendant and the penalty he faces, the case is too complex to expect adequate preparation for pretrial proceedings within the time limits established by §3161(c)(1)").  See also United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995)(affirming continuance where defendant faced the possibility of prosecution under a seldom used federal death penalty statute).

---

[12] Defendant argues, "[b]ecause Mr. Reddick is the only defendant charged in a straightforward crime, and thus there are no issues of accommodating the needs of other defense parties with respect to obtaining counsel or trial preparation, there are no 'complex case' issues, and designation of the case as a complex case legally was inappropriate."  Id.

[13] As discussed, absent a continuance an indictment must be returned within thirty days of arrest.  18 U.S.C. §3161(b).  Trial must be held within seventy days of the indictment.  Id. at §3161(c)(1).

12

Defendant argues the May 4, 2010 Order is void <u>ab</u> <u>initio</u> because it granted an "open-ended" continuance. Defendant contends, therefore, that the Court should rule that the time originally covered by the continuance, May 4, 2010 until the present, should not be "excludable" for the purposes of the Speedy Trial Act. Brief at 8.[14]  The Court disagrees.

Open-ended continuances are not prohibited by the Speedy Trial Act when properly granted pursuant to §3161(h)(7) and in the interest of justice. <u>United States v. Lattany</u>, 982 F.2d 866, 868 (3d Cir. 1993)("[W]e hold that open-ended continuances to serve the ends of justice are not prohibited if they are reasonable in length"); <u>United States v. Groff</u>, <u>supra</u>, at *3.[15]  In <u>United States v. Rush</u>, 738 F.2d 497, 508 (1st Cir. 1984), the court stated, "[d]oubtless it is generally preferable to limit a continuance to a definite period for the sake of clarity and certainty; but at the

---

[14]The Court does not agree that it granted an "open-ended" continuance.  The Order provides that after the Attorney General makes its final decision whether to seek the death penalty, a conference would be promptly scheduled to address all relevant Speedy Trial Act issues, including whether the complex case Order should be vacated or modified.  Nevertheless, for the purpose of this discussion the Court will assume its Order was open-ended.

[15]Although defendant disagrees with the Court's conclusion, he apparently does not contest that the May 4, 2010 Order was procedurally proper.  The Order clearly sets forth the basis and reasons for the Court's finding that the interests of justice in granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.  <u>See</u> 18 U.S.C. §3161(h)(7)(A).  Moreover, the Court continued the case "before the Speedy Trial Act clock would have otherwise run and it also made the requisite Speedy Trial Act statement...." <u>Lattany</u>, 982 F.2d at 880.

13

same time it is inevitable that in some cases . . . a court is forced to order an (h)(8) continuance without knowing exactly how long the reasons supporting the continuance will remain valid." See also Lattany, 982 F.2d at 881 ("It is thus apparent that a need for some open-ended continuances was foreseen by the drafters of the district court's Speedy Trial Act Plan").

This is an instance when a specific deadline was not appropriate. The Speedy Trial Act is designed to be "flexible enough to accommodate the practicalities of our adversary system." Id. at 811 (citation omitted). The Court agrees with the government that it would be "unconscionable" to bar defendant's participation, or to "ramrod" the matter through a death penalty review, without permitting defendant adequate time to carry out a mitigation investigation and prepare mitigation materials. Brief at 11. Therefore, defendant was entitled to the reasonable time he needed to prepare his mitigation materials. It was not appropriate for the Court to issue seriatim continuance Orders setting a 60-day deadline that was not likely to be met. Given the gravity of the death penalty issue to be decided, defendant was entitled to a reasonable period of time to prepare his mitigation materials. It was not unreasonable to extend the Speedy Trial Act deadlines while defendant prepared his mitigation materials and while they were being evaluated by the U.S. Attorney, the Capital Case Unit and the Attorney General. Given the fact that the decision whether to seek the death penalty is complex, and the fact that defendant requested

14

input into the decision-making process, the Court's complex case Order was reasonable, appropriate and in the interest of justice. Further, the fact that the Court's May 4, 2010 Order referred to a specific event makes for a more compelling case to support the Order in comparison to the Orders the Third Circuit upheld in Lattany, supra and Groff, supra.  In those cases, unlike here, the Orders extended the Speedy Trial Act deadlines until an indeterminate time in the future.  In addition, in those cases the court relied upon the parties to advise it when they were ready for trial.  This did not occur here.  It is also noteworthy that in Lattany the Third Circuit upheld a continuance Order that resulted in the underlying trial taking place 551 days after indictment.  982 F.2d at 868.  In Groff, the defendant was arraigned in July 2000 and his trial did not take place until 3 ½ years later in January 2004.

The Court does not agree with defendant that the "government . . . is in sole control of when the case continues."  Brief at 5 n.2.  The Court also does not agree that the government had no "temporal barriers" and could "dictate" how long the defendant remained in pre-trial detention. Brief at 5. As the history of the case demonstrates, the Court has closely managed the case and scheduled hearings when requested and appropriate.  If the government unreasonably delayed its death penalty decision, the Court could have and would have promptly addressed the issue by amending or vacating the May 4, 2010 Order.  When the Order was entered the parties and the Court had every reason to believe that

15

the government would act with due dispatch given the gravity of its decision.[16]  To the extent defendant argues the Attorney General should have already made its final decision, the argument has no merit.  Defendant asked for the opportunity to submit his mitigation materials to the U.S. Attorney before that office made its recommendation to the Capital Case Unit.  Defendant then asked for an opportunity to meet with the U.S. Attorney before its recommendation was finalized.  (The meeting was held on November 30, 2010).  It is unreasonable to expect the Attorney General to make its final decision immediately thereafter.  It is of no moment that defendant believes the decision to indict should be independent of whether the death penalty is pursued.  The government made its position clear since the outset of the case.[17]  The Court is not prepared to accept defendant's argument that as a matter of law it is unreasonable to wait for the death penalty decision to be made before an indictment is returned.  Assuming the parties do not unduly procrastinate, the Court does not believe it offends the public's interest in a speedy trial for an indictment to be returned

---

[16] In the government's counsel past experience "[i]t took at least two or three months for an answer to come back from Washington."  October 7, 2010 Tr. at 12:13-14.  Thus, it is likely the government's decision regarding whether to seek the death penalty would have been made already if defendant did not delay in submitting his mitigation materials.

[17] The government argues the United States Attorney's Manual provides for procedures to be used for a pre-indictment death penalty decision.  The government also argues that an indictment of a death-eligible offense must contain special findings by the grand jury that may not be required if the Attorney General does not authorize seeking the death penalty.  Brief at 12-13.

16

after a defendant has a full opportunity to present its death penalty mitigation defense.

To be sure, circumstances may exist where a valid "open-ended" Order should be stricken because it is unreasonable in length. Lattany, 982 F.2d at 882; Groff, supra, at *3.  However, this is not that case.  As discussed, the reason the government's final death penalty decision was not made sooner is because defendant waited until October 7, 2010 to serve his mitigation materials.  In addition, the seven-month period between May 4, 2010 and the present is not an inordinate amount of time.  See United States v. Stewart, 179 Fed. Appx. 814 (3d Cir. 2006)(defendant was not denied his right to due process by a delay of almost two years before he was indicted, absent evidence that the Government deliberately delayed the indictment for tactical advantage); Strohl v. Grace, 354 Fed. Appx. 650 (3d Cir. 2009)(murder defendant's constitutional right to due process was not violated by prosecution's decision to delay charging him with the victim's death until some five years after the victim died, despite defendant's claims that lost hospital reports "could" have been important, and that the lost records "may" have resulted in a different medical opinion regarding the cause of the victim's death).  Further, in this instance the public's interest in a Speedy Trial was outweighed by defendant's need and request to submit his death penalty mitigation materials to the government.

Despite the propriety of the May 4, 2010 Order, the Order will be modified.  The Court will extend the continuance in this matter

17

until February 15, 2011 for the same reasons set forth in the May 4, 2010 Order.  If a party requests a further continuance the request shall be made in a written application returnable before February 15, 2011.  In revising its Order, the Court heeds the Third Circuit's entreaty in Lattany, in which the Court stated:

> [W]e strongly urge district courts hereafter not to wait and rely on counsel to inform them when defendants are ready to go to trial, but instead to set deadlines. If it later appears that circumstances require postponement of any deadline so set, appropriate findings showing that the interests of justice require a further continuance can be made contemporaneously with any order extending the time. This procedure will avoid the kind of problems presented [here], not only under the Act but also under defendant's Sixth Amendment right to a speedy trial.

982 F.2d at 883.

Conclusion

Accordingly, for all the foregoing reasons, defendant's Motion to Vacate Complex Case Designation is DENIED.  An appropriate Order will be entered consistent with this Opinion.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

18